NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| WEST PALM BEACH HOTEL, L.L.C., <br><br> Plaintiff, <br><br> v. <br><br> ATLANTA UNDERGROUND, L.L.C., <br><br> Defendant. | Civ. No. 14-1063 <br><br> OPINION |

THOMPSON, U.S.D.J.

**INTRODUCTION**

This matter is before the Court upon West Palm Beach, L.L.C.'s motion for summary judgment as to Counts Three and Four of Atlanta Underground, L.L.C.'s Counterclaim, (Docket No. 24), and Atlanta Underground, L.L.C.'s motion to preclude admission or consideration of the parties' settlement discussions after January 13, 2014, (Docket No. 28). The Court has decided the matter upon consideration of the parties' written submissions and oral arguments. For the reasons set forth below, the Court will grant West Palm Beach, L.L.C.'s motion for summary judgment and deny Atlanta Underground, L.L.C's motion to preclude admission or consideration of the parties' settlement discussions.

**BACKGROUND**

West Palm Beach, L.L.C. (hereinafter, "Plaintiff") owned and operated a hotel located in West Palm Beach Florida (hereinafter, the "Property"). (Docket No. 10 at 3). In late October 2013, Plaintiff's broker received an expression of interest from Atlanta Underground, L.L.C.

(hereinafter, "Defendant") regarding the potential conveyance of the Property.  (Docket No. 24, Pl.'s Statement Facts at ¶ 1; Docket Entry No. 27, Def.'s Resp. Pl.'s Statement Facts at ¶ 1).  The broker advised that Defendant had closed on a sale of another property on September 19, 2013, and was seeking to complete a "like-kind" exchange under Section 1031 of the Internal Revenue Code.  (*Id*.).  In early November 2013, the parties signed a letter of intent (hereinafter, the "LOI") related to the potential sale and purchase of the Property.  (Docket No. 24, Pl.'s Statement Facts at ¶ 3; Docket Entry No. 27, Def.'s Resp. Pl.'s Statement Facts at ¶ 3).  The LOI

included the following language:

> 2. Purchase Price. Thirteen Million Seven Hundred Fifty Thousand Dollars ($13,750,000) and assumes that all FF&E leases (including installment contracts), encumbrances and other debt will be paid off in full at or prior to Closing. The Property shall be delivered to Purchaser unencumbered by any Management Agreement.
>
> . . . .
>
> 4. Investigation Period. Purchaser, its agents, employees and contractors shall have a period of Forty Five (45) days from the date of execution of a formal agreement of sale and purchase (the "Contract") in which to investigate and inspect the Property ("Investigation Period"), which may include engineering studies of all improvements and systems thereof, soil tests and analyses, environmental and hazardous waste tests and soil borings, feasibility studies and such other tests and investigations as determined by Purchaser to determine whether or not, in its sole discretion, it is satisfied with the Property and elects to proceed to closing. . . .
>
> . . . .
>
> 11. Exclusivity. In consideration of the substantial expenditure of time, effort and resources to be undertaken by Purchaser in consideration with the proposed transaction, upon execution of this letter by Seller, (a) Seller shall immediately cease, and shall cause its employees, agents, representatives and affiliates to immediately cease, all negotiations with any third persons or entities other than Purchaser with respect to any acquisition of the Property and (b) Seller shall refrain from and shall cause its employees, agents, representatives and affiliates to refrain from, directly or indirectly soliciting, discussing, negotiating, accepting or enter into any offer, agreement or arrangement with any third party other than Purchaser relating to any acquisition of the Property. Further, upon full execution of the Contract, Seller shall inform and shall cause its employees, agents, representatives and affiliates to inform all other third parties previously contracted regarding the Property of the existence of the Contract.
>
> . . . .
>
> 13. Letter of Intent Only. Please understand that this letter is intended to be and only is an indication as to the basic terms of the proposed transaction and is not a binding agreement, and it is understood that if a binding Contract is not executed between the parties on or TDB date then in such event this letter shall be null and void and the undersigned shall be relieved from any obligations or liabilities in connection herewith except for the Brokers provisions of paragraph 10 and Confidentiality provisions of paragraph 12 of this letter, which shall be binding on the parties hereto. Both Seller and Purchaser agree to act in good faith and exercise due diligence in negotiating and executing the Contract.

(Docket No. 9, Ex. A).

On January 12, 2014, a representative of Plaintiff sent the following email to a representative of Defendant:

> [W]e are prepared to finalize the contract as follows. However, please be advised that my client will require a $14,250,000 purchase price. This is the result of increases to the NOI over the last months which numbers we now have, as well as an income increase, to date, for January. Please advise your client that we received an unsolicited offer of $14,500,000, and 2 other expressions of interest. In short, as this process is slowly unfolding, the economics are changing due to the hotel's new numbers. If this is acceptable to your client, as well as the points I note below, we will make an effort to get you a final redraft before Carey leaves for an overseas trip this Tuesday afternoon. In light of the increase to the purchase price, Carey would be willing to reach out to Doubletree on your client's behalf to see if some of the PIP requirements can be reduced. Again, please let me know if this is acceptable as soon as possible.
> In addition, please see below, my responses in blue caps regarding my client's final positions on the identified open issues.

(Docket No. 27 at 68). After Plaintiff sought to increase the sales price to $14.25 million, Defendant contended that Plaintiff could not change the $13,750,000 price term indicated in the LOI. (Docket No. 24, Pl.'s Statement Facts at ¶ 13; Docket Entry No. 27, Def.'s Resp. Pl.'s Statement Facts at ¶ 13).

However, Plaintiff proposed a mechanism by which both parties could proceed to the conclusion of a sale and reserve the issue of purchase price to be resolved by a court. (Docket No. 24, Pl.'s Statement Facts at ¶ 16; Docket Entry No. 27, Def.'s Resp. Pl.'s Statement Facts at ¶ 16). Specifically, Plaintiff suggested that Defendant enter into a contract of sale providing a purchase price of $14.25 million, but also providing that the additional $500,000 in purchase monies would be placed in escrow. (Docket No. 24, Pl.'s Statement Facts at ¶ 17; Docket Entry No. 27, Def.'s Resp. Pl.'s Statement Facts at ¶ 17). Thereafter, the parties would initiate dispute resolution proceedings to determine whether Defendant possessed an enforceable right to purchase the property for $13.75 million. (*Id.*). If the dispute resolution process resulted in a determination favorable to Defendant, it would receive back the escrow funds and therefore

reduce the purchase price to $13.75 million; if the dispute resolution proceedings were to be resolved in favor of Plaintiff, it would retain the escrow monies and thus receive a total purchase price of $14.25 million. (*Id.*). Defendant rejected that proposal. (Docket No. 24, Pl.'s Statement Facts at ¶ 18; Docket Entry No. 27, Def.'s Resp. Pl.'s Statement Facts at ¶ 18).

On January 21, 2014, Plaintiff filed a civil action against Defendant in the Superior Court of New Jersey, Mercer County, Law Division requesting a judgment:

  a. Declaring that the Letter of Intent dated November 3, 2013, signed by the parties in regard to a potential conveyance of the Property, is null and void;
  b. Declaring that the Plaintiff has no obligation to convey the Property to the Defendant;
  c. Declaring that Defendant has no enforceable rights in or against the Property;
  d. Awarding the Plaintiff reasonable counsel fees and costs of suit; and
  e. Providing any other relief this Court finds equitable and just.

(Docket No. 1, Ex. A). On February 12, 2014, Plaintiff filed a motion in state court to proceed in a summary manner pursuant to New Jersey Rule 4:67. On February 19, 2014, Defendant removed the matter to this Court.

On February, 28, 2014, Defendant filed a Verified Answer and Counterclaim. (Docket No. 9). In its Counterclaim, Defendant sought the following relief:

(1) specific performance of the parties' LOI;

(2) specific performance of the parties contract for sale of the Property;

(3) Defendant's § 1031 tax damages caused by Plaintiff's breach of the LOI;

(4) Defendant's damages caused by Plaintiff's failure to sell the Property.

(*Id.*). On March 3, 2014, Defendant filed a motion for summary judgment on Defendant's claims for specific performance. (Docket No. 10).

On April 2, 2014, the Court held that Plaintiff was not obligated to convey the Property to the Defendant at the price set forth in the parties' LOI and denied Defendant's motion for summary judgment. (Docket Nos. 21-22).

On April 25, 2014, Plaintiff filed a motion for summary judgment as to Counts Three and Four of Defendant's Counterclaim. (Docket No. 24). On May 20, 2014, Defendant filed a motion to preclude admission or consideration of the parties' settlement discussions after January 13, 2014. (Docket No. 28). The Court heard the parties' oral arguments on Tuesday, July 29, 2014.

## **LEGAL STANDARD**

On a motion for summary judgment, the moving party will prevail if it establishes that there is no genuine issue as to any material fact and it is entitled to judgment as a matter of law. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585-87 (1986) (existence of a factual dispute will not defeat summary judgment; rather, the dispute must be genuine and the fact must be material); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A question of fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## ANALYSIS

**I. *Defendant's motion to preclude consideration of the parties' settlement discussions after January 13, 2014***

Defendant argues that the Court should not consider the proposal that Plaintiff made in January 2014 that the parties finalize a contract based on the higher $14.25 million purchase price sought by the Plaintiff, and place the additional $500,000 into escrow pending the conclusion of a litigation or other dispute resolution process. Defendant argues Plaintiff's proposal is an inadmissible settlement communication under *Fed. R. Evid.* 408(a).

*Fed. R. Evid.* 408(a) states the following:

> Evidence of the following is not admissible--on behalf of any party--either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction:
> (1) furnishing, promising, or offering--or accepting, promising to accept, or offering to accept--a valuable consideration in compromising or attempting to compromise the claim; and
> (2) conduct or a statement made during compromise negotiations about the claim--except when offered in a criminal case and when the negotiations related to a claim by a public office in the exercise of its regulatory, investigative, or enforcement authority.
> (b) Exceptions. The court may admit this evidence for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

Here, Plaintiff's proposal to conditionally close title at a higher price, while reserving the Defendant's rights to enforce the lower price indicated in the LOI, was not technically a settlement communication. It did not seek to resolve or compromise either side's assertion of their rights, but instead sought to allow the parties to get the benefit of their contemplated 1031 exchanges, while preserving the dispute over the purchase price. The policy behind *Fed. R. Evid.* 408, which generally precludes the admissibility of settlement communications to prove or disprove liability and damages, is that "if an offer of a dollar amount by way of compromise were to be taken as an admission of liability, voluntary efforts at settlement would be chilled."

*Perzinski v. Chevron Chem. Co.,* 503 F.2d 654, 658 (7th Cir. 1974).  Plaintiff's proposal was not designed to settle any dispute or avoid litigation, but was intended to preserve the parties' rights for resolution by litigation -- while also rendering moot the 1031 deadlines by allowing the transaction to close.

For the reasons set forth above, Defendant's motion will be denied.

## II. *Plaintiff's motion for summary judgment as to Counts Three and Four of Defendant's Counterclaim*

Defendant seeks the following damages in its Counterclaim: (1) "damages from Plaintiff equal to the 'grossed up' loss of Defendant's § 1031 tax benefit;" (2) "damages consisting of the difference between the $13,750,000 purchase price that Defendant was entitled to and the fair market value of the property;" and (3) "damages from Plaintiff consisting of the lost profits that Defendant would have realized from the operation of the property." (Docket No. 9 at ¶¶ 34-38). These damages claims are for expectancy damages -- benefits that Defendant would have realized had it finalized an agreement with Plaintiff for the sale and purchase of the property.

In cases such as this one, where parties have contractually agreed in a letter of intent to negotiate in good faith, but failed to finalize an agreement, courts have limited damages to the out-of-pocket losses incurred in connection with unsuccessful negotiations.  *B&P Holdings I, LLC. v. Grand Sasso, Inc.*, 114 F. App'x 461, 466 (3d Cir. 2004) ("In most cases, the purpose of a cause of action for breach of an agreement to negotiate in good faith is to compensate a party for expenditures made in continuing futile negotiations.").  In these types of cases, courts limit damages to out-of-pocket losses because an "agreement to negotiate in good faith does not guarantee the ultimate execution of a final contract." *Id*.

The Seventh Circuit has explored a theoretical scenario where damages for breach of an agreement to negotiate in good faith could be the same as the damages for breach of a final

contract. *See Venture Associates Corp. v. Zenith Data Sys. Corp.*, 96 F.3d 275, 278 (7th Cir. 1996). In that case, Judge Posner wrote the following:

> Damages for breach of an agreement to negotiate may be, *although they are unlikely to be*, the same as the damages for breach of the final contract that the parties would have signed had it not been for the defendant's bad faith. If, quite apart from any bad faith, the negotiations would have broken down, the party led on by the other party's bad faith to persist in futile negotiations can recover only his reliance damages -- the expenses he incurred by being misled, in violation of the parties' agreement to negotiate in good faith, into continuing to negotiate futilely. But if plaintiff can prove that had it not been for the defendant's bad faith the parties would have made a final contract, then the loss of the benefit of the contract is a consequence of the defendant's bad faith, and, provided that it is a foreseeable consequence, the defendant is liable for that loss—liable, that is, for the plaintiff's consequential damages.

*Id.* (citation omitted) (emphasis added).

Here, assuming that as a matter of law Defendant can receive expectancy damages for breaching an agreement to negotiate in good faith,[1] Defendant must demonstrate the following:

(1) Plaintiff's action, requesting a price increase, constituted bad faith; and

(2) Plaintiff's action, requesting a price increase, was the proximate cause of the parties' failure to finalize a contract.

*Id*.

I. *Did Plaintiff's action, requesting a price increase, constitute bad faith?*

Defining what type of conduct constitutes bad faith or good faith in the context of negotiating an agreement is a concept that defies precise definition. *Sun Pharm. Indus., Inc. v. Core Tech Solutions, Inc.*, A-0646-11T4, 2013 WL 1942619 (N.J. Super. Ct. App. Div. May 13, 2013) (quoting *Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Associates*, 182 N.J. 210, 224 (2005) ("Good faith is a concept that defies precise definition.")). The Seventh Circuit Court of Appeals, which has in a number of cases addressed the scope of a party's obligation to negotiate in good faith, has explained the severe limitations faced by litigants

---

[1] In, *B&P Holdings I, LLC.*, 114 F. App'x at 461 n. 5, the Third Circuit cited *Venture Associates Corp.*, in a footnote, but did not explicitly adopt the Seventh Circuit's theory that "[d]amages for breach of an agreement to negotiate may be . . . the same as the damages for breach of the final contract that the parties would have signed had it not been for the defendant's bad faith." *Venture Associates Corp.*, 96 F.3d at 275. The Third Circuit specifically stated the following:

> With regard to lost profits for the breach of an obligation to negotiate in good faith, the District Court assumed that lost profits theoretically were recoverable. According to the Court, however, Grand Sasso's failure to negotiate in good faith was not the proximate cause of the failure to sell the Property. On appeal, B&P attacks this ruling. Even assuming (as the District Court did) that lost profits theoretically are recoverable, we find B&P's argument unpersuasive.

*B&P Holdings I, LLC.*, 114 F. App'x at 465-66.

attempting to prove a breach of the duty to negotiate in good faith in the context of a non-binding letter of intent:

> "Good faith" is no guide. In a business transaction both sides presumably try to get the best of the deal. That is the essence of bargaining and the free market. And in the context of this case, no legal rule bounds the run of business interest. So one cannot characterize self-interest as bad faith. No particular demand in negotiations could be termed dishonest, even if it seemed outrageous to the other party. The proper recourse is to walk away from the bargaining table, not to sue for "bad faith" in negotiations.

*Feldman v. Allegheny Int'l, Inc.*, 850 F.2d 1217, 1222-23 (7th Cir. 1988)

Here, the Court is not convinced that Plaintiff acted in bad faith. After Defendant objected to an increase in the purchase price, Plaintiff offered to finalize an agreement with the Defendant on terms that would have put $500,000 into escrow while the parties litigated their dispute over whether the parties were bound by the price term indicated in the LOI. Plaintiff was willing to put potential increased sale proceeds at risk, in the event of an adverse ruling, to finalize the sale agreement.[2]

Furthermore, the Court is not convinced that Plaintiff acted in bad faith by requesting an increased purchase price for the Property. The parties signed the LOI, which included a purchase price; however, the LOI explicitly stated that it was "intended to be and only is an indication as to the basic terms of the proposed transaction and is not a binding agreement." (Docket No. 27 at 68). In determining whether a preliminary agreement is binding or not, the "first and most important factor" that courts must consider is "the language of the preliminary agreement." *Teachers Ins. & Annuity Ass'n of Am. v. Tribune Co.*, 670 F. Supp. 491, 499 (S.D.N.Y. 1987). "A primary concern for courts in such disputes is to avoid trapping parties in surprise contractual obligations that they never intended." *Id*. at 496. Here, the LOI does not state that the parties agreed to be bound to the price term set forth in the LOI without any

---
[2] Plaintiff ultimately sold the Property for $15 million. (Docket No. 24, Pl.'s Brief, at 18).

possibility of further negotiation. If the parties intended to be permanently bound to the price term set forth in the LOI, then the parties should have more clearly stated that intention in the LOI.

For the reasons set forth above, the Court is not convinced Plaintiff acted in bad faith.

II. *Was Plaintiff's action, requesting a price increase, the proximate cause of the parties' failure to finalize a contract?*

A reasonable jury could not definitely find that, absent Plaintiff's actions, the parties would have finalized a contract. At the time Plaintiff requested an increase in the purchase price of the Property, the parties were still negotiating "open terms" that needed to be settled before the parties could execute a final agreement. (Docket No. 27 at 68). In addition, the LOI called for an investigation period commencing upon the execution of the purchase contract. (Docket No. 9, Ex. A) ("Purchaser . . . shall have . . . (45) days from the date of execution of a formal agreement . . . [to] inspect the Property, which may include engineering studies of all improvements and systems thereof, soil tests and analyses, environmental and hazardous waste tests and soil borings, feasibility studies and such other tests and investigations . . . ."). *See also B&P Holdings I, LLC.*, 114 F. App'x at 466 ("Further, the number of approvals (zoning, planning, environmental, *etc.*) that would have been required, even if a final agreement had been reached, is daunting."). Given that the parties were still negotiating open terms and Defendant still needed to inspect the Property, the record does not support a finding that, absent Plaintiff's actions, the parties would have executed a final contract. (Docket No. 9, Ex. A).

For the reasons discussed above, expectancy damages are not available in this case. Because expectancy damages are the only damages that Defendant seeks, Plaintiff's motion will be granted and Counts Three and Four of Defendant's Counterclaim will be dismissed.

## **CONCLUSION**

  For the reasons discussed above, Plaintiff's motion will be granted. An appropriate order will follow.

                   */s/ Anne E. Thompson*
                   ANNE E. THOMPSON, U.S.D.J.

Date: 9/17/14